UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAYMOND DESAUTELS,

     Plaintiff,

v.                                 Case No:   2:15-cv-279-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

     This cause is before the Court on Plaintiff Raymond Desautels' Complaint (Doc. 1) filed on May 1, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.  Eligibility

     The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

### B.  Procedural History

On September 22, 2010, Plaintiff filed applications for disability insurance benefits and Supplemental Security Income asserting an onset date of May 1, 2009.  (Tr. at 146, 154). Plaintiff's applications were denied initially on February 16, 2011, and on reconsideration on April 25, 2011.  (Tr. at 97-99).  A hearing was held before Administrative Law Judge ("ALJ") Larry J. Butler on October 25, 2012.  (Tr. at 39-80).  The ALJ issued an unfavorable decision on August 8, 2013.  (Tr. at 23-38).  The ALJ found Plaintiff not to be under a disability from May 1, 2009 through the date of the decision.  (Tr. at 34).

On March 19, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-7).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on May 1, 2015. Defendant filed an Answer (Doc. 9) on July 10, 2015.  Both parties filed memoranda in support of their positions.  (Docs. 14, 15, 18).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 10).  This case is ripe for review.

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) can perform other work of the sort found in the national economy. *Packer*, 542 F. App'x at 891 (citing 20 C.F.R. § 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004)). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2012. (Tr. at 28). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2009, the alleged onset date. (Tr. at 28). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: knee disorders with surgery residuals, back disorders, intestinal disorders, and osteoarthritis. (Tr. at 28). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 30). Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). (Tr. at 30).

At step four, the ALJ determined that Plaintiff is able to perform his past relevant work as a manager. (Tr. at 33). The ALJ stated that "[i]n comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the undersigned finds that the [Plaintiff] is able to perform it as actually and generally performed." (Tr. at 33). Because the ALJ determined that Plaintiff could perform his past relevant work, the ALJ did not make any

findings for step five.  (*See* Tr. at 33-34).  The ALJ concluded that Plaintiff was not under a

disability from May 1, 2009, through the date of the decision.  (Tr. at 34).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether

the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390

(1971).  The Commissioner's findings of fact are conclusive if supported by substantial

evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence

must do more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the conclusion.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson*, 402 U.S. at 401;

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as the finder of fact,

and even if the reviewer finds that "the evidence preponderates against" the Commissioner's

decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932

F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560;

*accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize

the entire record to determine reasonableness of factual findings).

### II.    Analysis

Plaintiff argues three issues on appeal:

> 1.  The residual functional capacity ("RFC") assessment is not supported by
>     substantial evidence because the ALJ failed to account for Desautels'

intestinal disorders and non-exertional limitations in the RFC assessment, in violation of 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e).

2.   The credibility assessment conducted by the ALJ is not supported by substantial evidence because the ALJ inappropriately equated minimal daily functioning with work activities and did not consider the compounding effect of Desautels' obesity on his pain symptoms.

3.   The ALJ erred by finding that Desautels does not have a severe mental impairment within the meaning of the Act, because substantial evidence does not support the conclusion that his mental impairment is only a "slight abnormality" with a minimal effect on Desautels' ability to work.

(Doc. 14 at 5-13).  The Court addresses each issue in turn.

### A.  Plaintiff's Residual Functional Capacity

Plaintiff first contends that the ALJ erred by failing to account for Plaintiff's (i) intestinal disorders and (ii) non-exertional limitations in the RFC assessment, in violation of 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e).  (Doc. 14 at 5).  As a result, Plaintiff contends that the ALJ's RFC assessment for Plaintiff is not supported by substantial evidence.  *Id.*

### i.  Plaintiff's Intestinal Disorders

Plaintiff argues that "[a]n impairment, or combination of impairments, is 'severe' if it significantly limits the claimant's physical or mental abilities to perform basic work activities." (Doc. 14 at 5) (internal citations omitted).  Plaintiff contends that an ALJ must "perform an individual or function-by-function assessment of the claimant's work capacity."  (*Id.* (citing SSR 96-8p)).  Plaintiff argues that the ALJ "has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence."  (*Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).  Thus, Plaintiff argues that "every severe impairment must have at least one corresponding limitation in the RFC assessment because every severe impairment 'significantly limits' the claimant's work capacity."  (*Id.*).  Plaintiff

argues that his intestinal problems, such as his chronic diarrhea, "would be expected to cause non-exertional limitations, in the RFC." (*Id.* at 5-6).

Plaintiff points out that the ALJ found that his intestinal disorder was a severe impairment. (*Id.* at 6 (citing Tr. at 28)). Plaintiff states that his testimony and the medical treatment records show that "he has undergone multiple gastrointestinal surgeries." (*Id.* (citing Tr. at 49)). Plaintiff further states that he still has "extreme symptoms," including chronic diarrhea that causes him to use the restroom between eight and twelve times per day. (*Id.* (citing Tr. at 50)). Plaintiff argues that "the condition affects his ability to eat and that it takes him an extended period of time to clean up after himself." (*Id.*). Despite the finding that Plaintiff's issues are severe, however, Plaintiff states that "the ALJ imposed no limitations rationally related to the condition in the RFC." (*Id.* (citing Tr. at 30)). Instead, Plaintiff argues that the ALJ only found that Plaintiff "has exertional limitations in his ability to lift and carry as necessary for the full range of 'light work' as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b)." (*Id.*). Plaintiff argues that because the ALJ did not include any non-exertional limitations in the RFC, such as accounting for Plaintiff's unscheduled restroom breaks, the RFC assessment is not supported by substantial evidence and does not comply with the regulations. (*Id.* at 6-7).

Defendant disagrees. (Doc. 15 at 4). Defendant argues that the medical and testimonial evidence of record "does not establish that Plaintiff must, in fact, take unscheduled bathroom breaks." (*Id.*). Defendant further argues that "Plaintiff's subjective accounting of his need for such unscheduled breaks [is] inconsistent." (*Id.*). Defendant contends that "Plaintiff testified he has chronic diarrhea eight to twelve times a day, but he also testified he only gets diarrhea an hour after he eats and has 'accidents' about three times a month." (*Id.* (citing Tr. at 50-51 (internal citations omitted)). Defendant also notes that Plaintiff reported that he could walk

around for ninety minutes.  (*Id.* at 4-5 (citing Tr. at 53-54)).  Thus, Defendant argues that Plaintiff's testimony does not support his allegation of needing unscheduled breaks.  (*Id.*).

Additionally, Defendant points to Plaintiff's treatment reports.  Defendant argues that Plaintiff's treatment records "indicate he had irritable bowel syndrome," but Defendant argues that Plaintiff "did not report any specific symptoms, other than occasional abdominal pain."  (*Id.* at 5 (citing Tr. at 409, 416-17, 442)).  Defendant states that Plaintiff's physical examinations "consistently noted normal abdomen findings and that Plaintiff was not in acute distress."  (*Id.* (citing Tr. at 416, 445, 450, 452, 457, 463, 469, 473)).  Defendant, therefore, contends that the ALJ properly found that Plaintiff had failed to establish a credible need for such unscheduled breaks.  (*Id.* (citing Tr. at 31)).

In evaluating this issue, the Court notes that an ALJ is not required to include non-exertional impairments in an RFC assessment when the medical record does not support a finding that the non-exertional impairments affect a claimant's ability to work.  *See Vesy v. Astrue*, 353 F. App'x 219, 223 (11th Cir. 2009); *see also Gibbons v. Comm'r of Soc. Sec.*, No. 6:11-cv-1894-ORL-GJK, 2013 WL 688053, at *8 (M.D. Fla. Feb. 26, 2013).  In *Vesy*, for example, the claimant testified that her irritable bowel syndrome caused diarrhea and vomiting, which required her to take frequent bathroom breaks.  *Vesy*, 353 F. App'x at 223.  In that case, however, the medical records did not show that her symptoms affected her ability to perform light work.  *Id.*  As a result, the Eleventh Circuit concluded that the "ALJ did not have to include any non-exertional symptoms in his RFC assessment" and that the ALJ's RFC assessment was supported by substantial evidence.  *Id.*

In this case, Plaintiff testified that he needs to visit the restroom eight to twelve times per day.  (Tr. at 50).  Additionally, the medical record shows that Plaintiff had intestinal surgeries.

(Tr. at 308-322).  The medical record further shows that Plaintiff was diagnosed with irritable bowels.  (Tr. at 417).  Nevertheless, Plaintiff does not point to any medical evidence that shows that he requires unscheduled bathroom breaks or that Plaintiff has bouts of chronic diarrhea.  The only evidence of record on this issue is Plaintiff's subjective descriptions of his chronic diarrhea.  (Tr. at 50).  Accordingly. Defendant is correct that the medical evidence of record does not establish that Plaintiff must, in fact, take unscheduled bathroom breaks.  (*See* Doc. 15 at 4).

While the Court is sympathetic to Plaintiff's reports of chronic diarrhea and the toll he says the condition takes on him, the Court finds that there is no indication in the medical record that Plaintiff requires unscheduled breaks or that his symptoms affect his ability to perform light work.  *See Vesy*, 353 F. App'x at 223.  Because the medical record does not support Plaintiff's contentions, the ALJ's RFC assessment is supported by substantial evidence, and the ALJ did not err by failing to include any non-exertional limitations that may be caused by Plaintiff's intestinal disorders in the RFC assessment.  *See id.*  Accordingly, remand is not warranted on this ground.

### ii.   The Non-Exertional Limitations Identified by Dr. Desai

Plaintiff argues that the ALJ disregarded the opinion of the state agency medical consultant, Dr. Sharmishta Desai, M.D., but "failed to explain the weight given to the decision in violation of 20 C.F.R. §§ 404.1527, 416.927."  (Doc. 14 at 7).  Plaintiff states that Dr. Desai identified "a number of other non-exertional limitations."  (*Id.* (citing Tr. at 421-24)).  Specifically, Plaintiff states that Dr. Desai "reviewed the medical evidence of record and found that [Plaintiff] was limited in his ability to balance, stoop, kneel, crouch, crawl, and climb due to chronic arthritis causing him to limp."  (*Id.* (citing Tr. at 91, 421)).  Plaintiff argues that Dr. Desai found that Plaintiff "should avoid extreme cold, vibration, and hazards and that he had

environmental limitations." (*Id.* (citing Tr. at 421)). Thus, because the ALJ did not state the weight given to the decision, Plaintiff argues that the ALJ's finding that Plaintiff "can perform the full range of light work with no non-exertional limitations is not supported by substantial evidence." (*Id.*).

Defendant argues, however, that "an ALJ does not adopt the opinion of any one medical source, but considers the totality of the evidence in arriving at a conclusion on the ultimate question of disability." (Doc. 15 at 5 (citing 20 C.F.R. §§ 404.1527, 416.927)). Defendant further argues that an ALJ's RFC assessment does not need to reflect the findings of any particular doctor. (*See id.*). Rather, Defendant argues that when an ALJ relies on reports from other medical sources to determine Plaintiff's RFC, remand is not required. (*Id.*). Here, Defendant states that the ALJ relied on the medical records and opinions from Dr. Sareem, Orthopedic Specialists of Southwest Florida, and Dr. Tafel. (*Id.* at 6). Defendant argues that these records support the ALJ's conclusions, and, thus, the ALJ was not required to accept the functional limitations noted by Dr. Desai. (*See id.* at 6-7).

Medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). When evaluating a medical source, the factors to be considered by an ALJ include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any

treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id.* (citations omitted).

An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).  However, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Id.* (quoting *Sharfarz*, 825 F.2d at 279).  In situations where an ALJ "articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Nevertheless, while an ALJ's failure to specifically reference a doctor's opinion ordinarily constitutes reversible error, the Court is not required to reverse an ALJ's decision when the ALJ's error does not affect the ultimate findings. *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975 (11th Cir. 2014).  When an ALJ's error does not affect his or her ultimate findings, the error is harmless, and an ALJ's decision will stand. *Id.* (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

In *Tillman*, for example, the claimant argued that the ALJ failed to explicitly assign weight to the opinions of two doctors that treated the claimant during his hospitalization following a stroke. *Id.* at 976.  The Court, however, affirmed the ALJ's decision even though the ALJ failed to assign the particular weight given to the different medical opinions. *Id.*  The Court noted that the ALJ "expressly noted and considered the diagnostic evidence on which [the doctors] relied in forming their opinions, and that evidence, along with *other objective medical evidence in the record* and *[the claimant's] own testimony*, showed that he was not disabled and

incapable of work." *Id.* at 975 (emphasis added).  The Court further noted that the doctors'

opinions "concerned matters ultimately reserved to the Commissioner for final determination

(i.e., whether [the claimant] was legally disabled) and were therefore not entitled to controlling

weight." *Id.*  Thus, while acknowledging that the ALJ's failure to specifically reference the

opinions of the doctors would ordinarily constitute reversible error, the Court, nevertheless,

concluded that the failure did not affect the result in that case and affirmed the decision below.

*Id.*

In this case, Plaintiff argues that the ALJ's RFC assessment that Plaintiff can perform

light work without any non-exertional limitations is not supported by substantial evidence.  (Doc.

14 at 7).  The Court disagrees.

Light work is defined in the regulations as follows:

(b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567; 20 C.F.R. § 416.967.

As stated above, the scope of the Court's review is limited to determining whether the

ALJ applied the correct legal standard, *McRoberts*, 841 F.2d at 1080, and whether the findings

are supported by substantial evidence, *Richardson*, 402 U.S. at 390.  When supported by

substantial evidence, the district court will affirm.  *See Edwards*, 937 F.2d at 584 n.3; *Barnes*,

932 F.2d at 1358.  In this case, the ALJ's findings are supported by substantial evidence.

For instance, in his opinion, the ALJ noted that Dr. Sareem consultatively examined Plaintiff in February 2011.  (Tr. 32 (citing 416-19)).  The ALJ wrote that Dr. Sareem noted that Plaintiff has intermittent lower back pain and that Plaintiff could lift up to one hundred pounds. (Tr. at 32 (citing Tr. at 416)).  The ALJ specifically stated that this fact supports his finding that Plaintiff "is able to lift/carry twenty pounds occasionally and ten pounds frequently"—*i.e.*, perform light work.  (Tr. at 32).  Upon consideration, this Court finds that this fact indeed supports the ALJ's finding that Plaintiff is able to perform light work.  (*See id.*).

Further, the ALJ stated that Dr. Sareem noted that Plaintiff demonstrated "normal sensory functions/coordination, normal spinal curvature, normal deep tendon reflexes" and "only a slight left knee deformity, full strength, normal motor strength, and normal dexterity."  (Tr. at 32 (citing Tr. at 416)).  The ALJ noted that Dr. Sareem did not detect any signs of "spinal tenderness/deformity/spasm, extremity edema/ulceration/clubbing/cyanosis/varicosities/ deformities, or joint swelling."   (Tr. at 32 (citing Tr. at 416)).  Further, the ALJ wrote that Dr. Sareem noted that, although Plaintiff "possesses a left-sided limp, [Plaintiff] did not use prosthesis or any assistive device."  (Tr. at 32 (citing Tr. at 416)).  The ALJ opined that "Dr. Sareem's objective observations evidenced [Plaintiff] was essentially physically as well as mentally stable and able to function."  (Tr. at 32).  The Court concludes that these medical records further support the ALJ's conclusions that Plaintiff could perform light work.  (*See* Tr. at 32-33).

Additionally, the ALJ's opinion references records from Orthopedic Specialists of Southwest Florida.  (Tr. at 32).  These records included radiograph reports and an examination report by Dr. Tafel.  (Tr. 32 (citing Tr. at 479-82)).  The ALJ noted that the "left knee and lumbar spine radiographs revealed degenerative left knee changes and degenerative lumbar spine

spondylosis." (Tr. 32 (citing Tr. at 479-80)). The ALJ further noted that "the films did not show any signs of left knee bony fractures/dislocations/bony lesions/masses/foreign bodies, or signs of lumbar fracture/bony lesions/soft-tissue masses." (Tr. 32 (citing Tr. at 479-80)). The ALJ also stated that the "lumbar x-rays also demonstrated maintained vertebral body heights and alignment." (Tr. 32 (citing Tr. at 479-80)). Upon review, the Court finds that these records do not contradict the ALJ's conclusion that the medical records "support a finding of severity, but not a finding of disability." (Tr. at 32).

The ALJ also noted that Dr. Tafel had observed that Plaintiff's knee joint space "looks fairly well" and also that Dr. Tafel had only recommended conservative treatment for Plaintiff. (Tr. 32 (citing Tr. at 481-82)). While Dr. Tafel stated that Plaintiff "was probably not able to do work requiring squatting or using ladders," the ALJ noted that Dr. Tafel did not conclude that Plaintiff "was unable to perform any type of work activity." (Tr. at 32 (citing Tr. at 481)). Upon review, the Court finds that these records do not contradict the ALJ's conclusion that Plaintiff could perform light work. (*See* Tr. at 30).

In addition to the medical records, the ALJ also cited Plaintiff's testimony at the hearing. In pertinent part, the ALJ's opinion notes that Plaintiff stated that he is able to walk up to ninety minutes. (*See* Tr. at 31). The ALJ noted that Plaintiff is able to do odds jobs for which he gets paid well. (Tr. at 31). In fact, the ALJ stated that Plaintiff's testimony showed that Plaintiff was able to perform those odd jobs, even with his impairments. (Tr. at 32). The ALJ further stated that Plaintiff is able to work around the house, take care of himself, and drive. (Tr. at 31). Moreover, based on the contradictions in Plaintiff's statement, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not

entirely credible.  (*See* Tr. at 31).  Upon review, the Court finds that the ALJ cited specific

testimonial evidence for his conclusion that Plaintiff could perform light work.  (Tr. at 31).

In this case, even if the Court would have reached a contrary result and even if the Court

found that "the evidence preponderates against" the Commissioner's decision, the Court is still

bound to the decision where it where the Commissioner's decision is supported by substantial

evidence.  *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358).  Here, the ALJ cited

specific medical records and testimony that support his finding that the Plaintiff can perform

light work.  (*See* Tr. at 31-32).  Accordingly, the ALJ's RFC assessment is supported by

substantial evidence, and the ALJ did not err by failing to include the non-exertional limitations

opined by Dr. Desai.

Additionally, the Court notes that the failure by an ALJ to specifically reference a

medical opinion ordinarily constitutes reversible error.  *Tillman*, 559 F. App'x at 976.

Nevertheless, if an ALJ's error does not affect his/her ultimate findings, the error is harmless,

and an ALJ's decision will stand.  (*Id.* at 975).  In this case, the ALJ did not address Dr. Desai's

medical opinion in his decision.  Nevertheless, there is no evidence that Dr. Desai's opinion

would have affected the ALJ's ultimate findings.  In this case, as in *Tillman*, other objective

medical evidence in the record and Plaintiff's own testimony supports the ALJ's findings.  *See*

*Tillman*, 559 F. App'x at 976.  Thus, because other objective medical evidence in the record and

Plaintiff's own testimony supports the ALJ's finding that Plaintiff could perform light work, the

Court finds that the ALJ's decision is supported by substantial evidence.  Accordingly, the Court

finds that the ALJ did not err by failing to reference Dr. Desai's medical opinion in his decision.

Or, if the ALJ did err, any error in omitting the opinion of Dr. Desai is harmless because Dr.

Desai's opinion does not affect the ALJ's ultimate findings.  Accordingly, the ALJ's decision on this issue is affirmed and remand is not warranted on this ground.

### B.  The ALJ's Credibility Findings

Plaintiff next contends that the credibility assessment conducted by the ALJ is not supported by substantial evidence.  (Doc. 14 at 7).  Plaintiff argues that his objective imaging findings cannot be directly correlated to his reported pain levels because the ALJ's opinion was based on old imaging studies and because Plaintiff was unable to obtain updated studies.  (*Id.* at 8).  Additionally, Plaintiff argues that the ALJ inappropriately equated minimal daily functioning with work activities.  (*Id.* at 8).  Plaintiff argues that "minimal daily functioning such as cooking, driving, basic household chores, and attending church are not comparable to typical work activities and should not be used to discredit a claimant's testimony relating to pain symptoms." (*Id.* (citing *Cavarra v. Astrue*, 393 F. App'x 612, 614 (11th Cir. 2010)).  Plaintiff argues that he could perform "some various odd jobs," but that those activities are not "done on a regular and continuing basis" and also are not "comparable to regular and continuing work."  (*Id.* at 9). Finally, Plaintiff argues that the ALJ did not consider the compounding effect of his obesity on his pain symptoms.  (*Id.*).  Plaintiff argues that the error is particularly pronounced here because of his arthritis and impairment to weight-bearing joints.  (*Id.*).

Defendant disagrees.  Defendant argues that a credibility determination by the ALJ is a question of fact and, thus, is subject only to the limited review of ensuring that the finding is supported by substantial evidence.  (Doc. 15 at 7) (citations omitted).  Defendant argues that the ALJ "provided several cogent reasons for discounting Plaintiff's credibility."  (*Id.*).  Specifically, Defendant points to the ALJ's discussion that "Plaintiff did 'odd jobs' for church members such as cleaning houses and helping with A/C problems approximately three days a week" and that

Plaintiff "actively looked for work during the relevant period and obtained unemployment benefits." (*Id.* at 7-8 (citing Tr. at 31, 44-45, 48, 72, 74, 77-78)). Additionally, although not articulated by the ALJ, Defendant argues that Plaintiff's smoking habit and "Plaintiff's conservative treatment, which consisted of medication management, also belies his claim of disability." (*Id.* at 8-9).

Defendant further argues that "Plaintiff may not rest his case on an obesity diagnosis" and that "[a] finding of disability hinges not on the name of the condition, but on the functional limitations . . . that prevent the individual from engaging in any work available in the national or regional economy." (Doc. 15 at 10). Defendant argues that Plaintiff "has failed to establish the ALJ did not properly consider his obesity." (*Id.* at 11). Specifically, Defendant argues that "the medical evidence notes Plaintiff is obese but is in no acute distress, although he has been advised to diet and exercise. (*Id.* at 10 (citing Tr. at 410, 444, 447, 450, 453, 455, 457, 464, 466, 469, 470, 473)). Defendant argues that "[t]here are no functional limitations or pain complaints associated with his obesity." (*Id.*). Thus, according to Defendant, there is no error. (*See id.*).

In his reply, Plaintiff disputes Defendant's contentions arising from seeking unemployment benefits and disability benefits simultaneously. (Doc. 18 at 5). Plaintiff argues that the Social Security Administration's own policy does not preclude the simultaneous receipt of both unemployment benefits and disability benefits. (*See id.* at 6). Further, Plaintiff argues that Defendant engaged in an impermissible "*post hoc* rationalization of the ALJ's credibility finding" in arguing that Plaintiff's "addiction to tobacco undermines his credibility." (*Id.*).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged

pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence.  *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225 (internal citations omitted).  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Id.*  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.  The factors for an ALJ to consider in evaluating a plaintiff's subjective symptoms are:  "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

In this case, the ALJ clearly articulated his credibility finding based on substantial supporting evidence.  *See Foote*, 67 F.3d at 1562.  Specifically, the ALJ first cited the fact that Plaintiff did "odd jobs" for church members such as cleaning houses and helping with A/C problems approximately three days a week.  (Tr. at 31).  This is a specific, clearly articulated reason based on a factor the ALJ must consider—that is, the claimant's daily activities. *See Moreno*, 366 F. App'x at 28

Another reason given by the ALJ is that Plaintiff "actively looked for work during the relevant period and obtained unemployment benefits." (Tr. at 31). Plaintiff cites *Cavarra v. Astrue* for the proposition that the ALJ inappropriately equated minimal daily functioning with work activities. (Doc. 14 at 8). In *Cavarra*, the Court found that "the ALJ failed to articulate good cause for discrediting" a doctor's medical assessment. *Cavarra*, 393 F. App'x at 615. Specifically, the ALJ had emphasized the fact that the claimant's daily activities, including performing basic household chores, cooking, driving, and attending church, were inconsistent with a doctor's assessment showing that the claimant could not perform sedentary work. *Id.* at 614. The Eleventh Circuit stated that "minimal daily functions are not comparable to typical work activities." *Id.* (citing 20 C.F.R. § 416.921(b)). Thus, because "the ALJ did not explain how the ability to perform basic household chores with difficulty qualified [the claimant] to perform medium work, which 'involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds,'" the Court found that the ALJ had not articulated good cause. *Id.* at 615.

The present case is distinguishable from *Cavarra*. First, unlike in *Cavarra*, the present case does not deal with discrediting a doctor's medical opinion based on minimal daily functioning. *See Cavarra*, 393 F. App'x at 614-15. Rather, the issue here is whether minimal daily activities can be used in determining Plaintiff's credibility. Nothing in the *Cavarra* decision states that the ALJ cannot use a plaintiff's minimal daily functioning in a credibility analysis. *See id.* Instead, the Eleventh Circuit only indicated that the ALJ had not articulated good cause for discrediting a doctor's medical opinion. *See id.* The Court did not state that the ALJ erred in evaluating the claimant's minimal daily functioning. *See id.* Accordingly, the ALJ

did not err in this case by evaluating Plaintiff's minimal daily functioning in the credibility analysis.

Additionally, based on the Social Security Administration Memorandum supplied by Plaintiff, it appears that the Social Security Administration's own policy does not preclude the simultaneous receipt of both unemployment benefits and disability benefits. (Doc. 18 at 10 (citing Memorandum from Frank A. Cristado Chief Administrative Law Judge to All Administrative Law Judges, Social Security Administration, Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits – REMINDER, dated Aug. 9, 2010) ("Memo"))). Nevertheless, the Memo cited by Plaintiff also states that an "application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence." (*See* Memo at Doc. 18 at 10). The Memo further states that "ALJs should look at the totality of the circumstances in determining the significance of the application for unemployment benefits and related efforts to obtain employment." *Id.*

In this case, the ALJ evaluated the fact of Plaintiff's application for unemployment benefits together with all of the medical and other evidence when evaluating Plaintiff's credibility. (*See* Tr. at 31-32). Thus, it was not error for the ALJ to use Plaintiff's application for unemployment benefits, in connection with other reasons, as a basis for discounting Plaintiff's credibility.

Finally, the Court notes that the ALJ did not discuss the effect of Plaintiff's obesity on his pain symptoms. The Court further notes, however, that Plaintiff bears the burden of proof through step four. *See Hines-Sharp*, 511 F. App'x at 915 n.2. In this instance, Plaintiff does not point to any medical evidence of record showing that his obesity results in any functional limitations. Because Plaintiff has not shown how his obesity results in any functional

limitations, the Court finds that Plaintiff has not met his burden of proof.  *See id.*  Moreover, as stated above, the ALJ articulated other, adequate reasons to discount Plaintiff's credibility.

Upon consideration, the ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence, and remand is not warranted on this basis.

### C.  Plaintiff's Mental Impairments

Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff does not have a severe mental impairment.  (Doc. 14 at 10).  Plaintiff argues that his mental impairment is clearly reflected in the record.  (*See id.* at 12).  Thus, by finding that Plaintiff does not have a severe medically determinable mental impairment, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that reversal is appropriate.  (*Id.* at 13).

Defendant, however, argues that the medical records do not show that Plaintiff's mental impairments are more than a "slight abnormality with such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, regardless of age, education, or work experience."  (Doc. 15 at 12).  Defendant notes that "Plaintiff's mental health condition was generally noted to be normal on examination."  (*Id.* (citing Tr. at 416-19, 445, 452, 465, 470, 474)).  As a result, Defendant argues that "[g]iven the lack of documented functional limitations, the ALJ properly concluded that Plaintiff does not have a severe mental impairment that impacts on his RFC for light work."  (*Id.*).

In evaluating this issue, the Court notes that at step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must

last continuously for at least twelve months.  *See* 20 C.F.R. §§ 404.1505(a).  This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  Rather, the ALJ must only consider the claimant's impairments in combination, whether severe or not.  *Id.*  If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three.  *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the ALJ made a determination that Plaintiff suffered from the following severe impairments:  knee disorders with surgery residuals, back disorders, intestinal disorders, and osteoarthritis.  (Tr. at 28).  Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe.  *See Heatly*, 382 F. App'x at 825.  The only requirement is that the ALJ considered Plaintiff's impairments in combination, whether severe or non-severe.  *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe.  Specifically, in making his RFC determination, the ALJ stated that:

> the undersigned *has considered all symptoms* and the extent to which these
> symptoms can reasonably be accepted as consistent with the objective medical

> evidence and other evidence, based on the requirements of 20 CFR 404.1529 and
> 416.929 and SSRs 96-4p and 96-7p.  The undersigned *has also considered opinion
> evidence* in accordance with the requirements of 20 CFR 404.1527 and 416.927
> and SSRs 96-2p, 96-Sp, 96-6p and 06-3p.

(Tr. at 30 (emphasis added)).  Based on these statements, the Court concludes that the ALJ

considered all of Plaintiff's impairments, whether severe or not, when he considered the

evidence of record.

Moreover, the Court notes that the ALJ specifically found that Plaintiff's medically

determinable mental impairment of adjustment disorder was not severe.  (Tr. at 29).  In making

his finding that Plaintiff's mental limitations were non-severe, the ALJ specifically considered

the medical evidence of record regarding Plaintiff's symptoms.  (*See* Tr. at 29).  As a result,

regardless of whether the ALJ erred in this conclusion that Plaintiff's mental impairments were

non-severe, the record nevertheless demonstrates that the ALJ considered Plaintiff's mental

impairments in combination with Plaintiff's other impairments.  (*See* Tr. at 30).  Therefore, the

ALJ applied the correct legal standard and did not err in failing to find Plaintiff's mental

impairments are severe, or if he did err, the error was harmless.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the

Court finds that the decision of the ALJ is supported by substantial evidence and decided upon

proper legal standards.

Accordingly, **IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42

U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending

motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on July 29, 2016.


_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties